**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14–CV–00656–RM–KMT

MARILYN O. SHAFER,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York Insurance Company, and
SCHLUMBERGER TECHNOLOGIES, INC., a Texas Corporation,

    Defendants.

---

**ORDER**

---

This matter concerns Plaintiff Marilyn O. Shafer's claim for life insurance benefits allegedly due under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

This matter is before the Court on Plaintiff's motion for partial summary judgment regarding the proper standard of review under ERISA for a benefit denial claim. (ECF No. 26.) Plaintiff contends that she is entitled to a *de novo* standard of review and a jury trial due to a Colorado statute concerning the subject. Defendants Metropolitan Life Insurance Company ("MetLife") and Schlumberger Technology Corporation[1] ("STC") oppose Plaintiff's motion. (ECF No. 29.)

---

[1] Schlumberger Technology Corporation ("STC") avers that Plaintiff erroneously identified it as "Schlumberger Technologies, Inc." (ECF No. 29.) Plaintiff does not contest STC's averment.

For the reasons stated below, the Court DENIES Plaintiff's motion regarding the proper standard of review. The Court concludes that while the part of Colo. Rev. Stat. § 10-3-1116(3) (2008) providing for a *de novo* standard of review, standing alone, would not be preempted, the part of Colo. Rev. Stat. § 10-3-1116(3) providing for a jury trial conflicts with ERISA's remedial structure by altering the judiciary's role. Thus, the Court concludes that ERISA preempts, in its entirety, Colo. Rev. Stat. § 10-3-1116(3).

## I.     BACKGROUND

Plaintiff's deceased husband, Michael Shafer, was a participant in the Schlumberger Group Welfare Benefits Plan (the "Plan"), effective January 1, 2012. (ECF Nos. 20-2 at 43-44, 20-17 at 1-2, 20-27 at 28-30; Shafer Rec. 0093-94, 0801-02, 1328-30.) STC is the group policyholder of the 2012 Plan. (ECF No. 20-1 at 3; Shafer Rec. 0003.) The Plan provides that the "Plan Administrator" and "other Plan fiduciaries" have "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (ECF No. 20-2 at 36; Shafer Rec. 0086.) The Plan Administrator and Plan Sponsor is STC. (ECF Nos. 20-2 at 32, 20-8 at 26; Shafer Rec. 0082, 0376.) The Plan Administrator and Plan Sponsor are based in Houston, Texas. (ECF Nos. 20-2 at 32, 20-8 at 26; Shafer Rec. 82, 376.)

MetLife issued the 2012 Plan to STC in Texas. (ECF Nos. 20-1 at 2-3, 20-2 at 32; Shafer Rec. 0002-03, 0082.) STC issued the 2012 Plan to Mr. Shafer in Colorado. (ECF No. 20-1 at 2-3, 38; Shafer Rec. 0002-03, 0038.)

MetLife informed Plaintiff of its decision to deny benefits over the amount of $873,000.00. (ECF No. 20-10 at 30-31; Shafer Rec. 0480-81.) On June 6, 2013, Plaintiff appealed this denial of benefits under the 2012 Plan. (ECF No. 20-21 at 2-10; Shafer Rec. 1002-

10.) MetLife confirmed receipt of Plaintiff's appeal letter via fax on June 12, 2013. (ECF No. 20-21 at 12-13; Shafer Rec. 1012-13.) On July 29, 2013, MetLife upheld its denial of benefits for any amount over $873,000.00. (ECF No. 20-21 at 27-28; Shafer Rec. 1027-28.)

On March 3, 2014, Plaintiff filed this lawsuit against Defendants challenging the denial of benefits for any amount over $873,000.00. (ECF No. 1.) By motion for partial summary judgment (ECF No. 26), Plaintiff seeks both *de novo* review and trial by jury on the claim denial under Colo. Rev. Stat. § 10-3-1116(3).

## II.     LEGAL STANDARDS

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569-70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light

most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id*. The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response

or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

**III.   ANALYSIS**

At issue in this matter is Section 10-3-1116(3) of the Colorado Revised Statutes[2]. Section 10-3-1116(3) states:

> An insurance policy, insurance contract, or plan that is issued in this state shall provide that a person who claims health, life, or disability benefits, whose claim has been denied in whole or in part, and who has exhausted his or her administrative remedies shall be entitled to have his or her claim reviewed de novo in any court with jurisdiction *and* to a trial by jury.

Colo. Rev. Stat. 10-3-1116(3) (emphasis added). Further, the Colorado General Assembly declares that this "section is a law regulating insurance." Colo. Rev. Stat. 10-3-1116(7).

**A.   Applicability of Colorado Revised Statute § 10-3-1116(3)**

Defendants contend that a predicate condition to the applicability of Section 10-3-1116(3) has not been met, *i.e.*, that the 2012 Plan was not "issued in this state [of Colorado]." (ECF No. 29 at 9-10.) MetLife issued the 2012 Plan to STC in Texas as a "group policyholder." (ECF Nos. 20-1 at 2-3, 20-2 at 32; Shafer Rec. 0002-03, 0082; ECF No. 29 at 9.) STC administers the 2012 Plan in Texas. (ECF Nos. 20-2 at 32, 20-8 at 26; Shafer Rec. 0082, 0376.) STC, however, then issued the 2012 Plan to Mr. Shafer. (ECF No. 20-1 at 2-3; Shafer Rec. 0002-03.)

Both parties agree that "issued" means one of the following: (1) the preparation and signing of the policy; (2) the delivery and acceptance of the policy; or (3) the preparation, execution and delivery of the policy. (ECF No. 29 at 9; ECF No. 32 at 6.) The parties disagree

---

[2] Colo. Rev. Stat. 10-3-1116(1) has been held preempted by ERISA. *Timm v. Prudential Ins. Co. of Am.*, 259 P.3d 521, 525-27 (Colo. Ct. App. 2011).

as to whether "plan issuance" ends at MetLife's issuing the group policy to STC or whether it continues to STC's issuing the 2012 Plan to Mr. Shafer.

The principle objective of ERISA is to protect plan participants and beneficiaries. 29 U.S.C. §§ 1001(b), 1001(c), 1103(c)(1), 1104(a)(1), 1108(a)(2), 1132(a)(1)(B); *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (citation omitted). ERISA defines the term "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). ERISA defines the term "beneficiary" as "a person designated by participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The parties do not dispute that Mr. Shafer was a 2012 Plan participant and that Plaintiff is a 2012 Plan beneficiary.

Because ERISA is designed to benefit plan participants or beneficiaries, it would make little sense to limit "issue" as to only the relationship between MetLife and STC. Rather, the Court, in furtherance of ERISA's principle purpose, holds that STC issued the 2012 Plan to Mr. Shafer because he, and his designated beneficiary, were the intended protected individuals. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 359 (2002) (identifying that the employer *issued* a "Certificate of Group Coverage" to employees who participated in the employer-sponsored plan).

The Court finds Defendants' reliance upon *Carberry v. Metro. Life Ins. Co.*, Case No. 09-CV-02512-DME-BNB, 2011 WL 2887842, at *2 (D. Colo. July 19, 2011) and *Krob v. Hartford Life & Acc. Ins. Co.*, Case No. 10-CV-00719-RPM, slip op. (D. Colo. June 16, 2010) as

misplaced and unconvincing. In *Carberry*, the court acknowledged that the plaintiff did not pursue the argument that his employer "arguably" issued the plan at issue to him. *Carberry*, 2011 WL 2887842 at *2. Further, the court assumed that Carberry's former employer did issue the plan to him but found that it occurred in Arizona not in Colorado. *Id*. In contrast, in this matter, the parties do not dispute that if any issuance occurred, then it occurred in Colorado. And the Certificate of Insurance at issue states that it was issued to Mr. Shafer under STC's group policy. (ECF No. 20-1 at 2-3; Shafer Rec. 0002-03.) *Krob* is a decision that was issued without any citation to the record or explanation of its underlying facts or reasoning, and for those reasons, the Court finds it not persuasive for the proposition which Defendants assert.

    **B.**    **Whether ERISA Preempts Colorado Revised Statute § 10-3-1116(3)**

Due to ERISA's "statutory complexity," "any court forced to enter the ERISA preemption thicket sets out on a treacherous path." *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003) (internal quotations and citations omitted).

ERISA permits an individual who is denied benefits under an ERISA-governed plan to challenge that denial in a federal district court. *See* 29 U.S.C § 1132(a)(1)(B). "ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). Under United States Supreme Court precedent, in the absence of a federally defined standard of review, a district court must review a denial of plan benefits under a *de novo* standard of review unless the plan provides the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Id*. at 115. In this case, the 2012 Plan provides the Plan Administrator and other fiduciaries with such discretionary authority. (ECF No. 20-2 at 36; Shafer Rec. 0086.)

The parties here, however, contracted in light of the 2008 Colorado statute which provides a person whose insurance claim has been denied with an entitlement to *de novo* judicial review of that determination and the right to a jury trial.  Colo. Rev. Stat. § 10-3-1116(3).  The question then becomes whether ERISA preempts Section 10-3-1116(3).  Congress left the development ERISA law details to the courts.  *See Firestone Tire & Rubber*, 489 U.S. at 110.

ERISA's express preemption clause ("Preemption Clause") broadly recites that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."  29 U.S.C. § 1144(a).  Defendants argue that ERISA preempts Section 10-3-1116(3).  However, 29 U.S.C. § 1144(b)(2)(a) (the "Savings Clause") provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."  Plaintiff contends that ERISA does not preempt her claim because Section 10-3-1116(3) regulates insurance and, thus, is saved from ERISA's Preemption Clause.  Finally, ERISA's deemer clause ("Deemer Clause") provides that self-funded benefit plans are not to be deemed insurance companies for the purpose of any state laws purporting to regulate such companies.  *See id*. § 1144(b)(2)(B).  Defendants do not argue that the Deemer Clause is applicable to this matter.

Although the Tenth Circuit Court of Appeals has yet to address this particular issue, *i.e.*, whether ERISA preempts Section 10-3-1116(3), *Menge v. AT&T, Inc.*, Case No. 14-1210, 2014 WL 7172350, at *3 n.1 (10th Cir. Dec. 17, 2014), the Court holds that ERISA preempts Section 10-3-1116(3).

1. Express Preemption

A state statute "regulates insurance" within the meaning of the Savings Clause when it is: (1) "specifically directed toward entities engaged in insurance"; and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003). For the following reasons, the Court holds that ERISA does not *expressly* preempt Section 10-3-1116(3).

    a. *Whether Section 10-3-1116(3) is Directed Toward Entities Engaged in Insurance*

Defendants contend that Section 10-3-1116(3) is overly broad because it would apply to all ERISA plan documents and thus, is not specifically directed to entities engaged in insurance. (ECF No. 29 at 11.) Although the statute itself identifies that it is a law regulating insurance, Colo. Rev. Stat. § 10-3-1116(7), the Court finds support that Section 10-3-1116(3) is a statute directed toward entities engaged in insurance in the Supreme Court's holding in *Rush Prudential*, 536 U.S. at 385-87. In *Rush Prudential*, the Supreme Court held that

> [w]hile the statute designed to [regulate insurance and medicine] undeniably eliminates whatever may have remained of a plan sponsor's option to minimize scrutiny of benefit denials, this effect of eliminating an insurer's autonomy to guarantee terms congenial to its own interests is the stuff of garden variety insurance regulation through the imposition of standard policy terms. . . . It is therefore hard to imagine a reservation of state power to regulate insurance that would not be meant to cover restrictions of the insurer's advantage in this kind of way. . . . To the extent that benefit litigation in some federal courts may have to account for the effects of [the statute], it would be an exaggeration to hold that the objectives of [ERISA's Savings Clause] are undermined.

536 U.S. at 387 (internal citations omitted). Further, the Supreme Court in *Rush Prudential* held

> [w]hatever the standards for reviewing *benefit denials* may be, they cannot conflict with anything in the text of the statute, which we have read to require a uniform judicial regime of categories of relief and standards of primary conduct, not a uniformly lenient regime of reviewing benefit determinations.

536 U.S. at 385 (emphasis added and citation omitted). Thus, because Section 10-3-1116(3) requires insurance documents to provide a specific standard of review for a benefit denial and the right to a jury trial, the Court finds that Section 10-3-1116(3) is a law directed toward entities engaged in insurance. *See Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009) (holding that "a law which regulates what terms insurance companies can place in their policies regulates insurance companies") (citations omitted); *see also Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 605 (6th Cir. 2009) (holding that certain rules meet the first prong of the *Kentucky Association* test because those rules regulate insurers with respect to their insurance practices).

Further, insurance regulation is not preempted merely because it conflicts with substantive plan terms or affects third parties. *Kentucky Ass'n*, 538 U.S. at 337-38; *Rush Prudential*, 536 U.S. at 385 n.16 (citation omitted).

b. *Whether Section 10-3-1116(3) Substantially Affects the Risk Pooling Arrangement Between the Insurer and the Insured*

Defendants' main argument focuses on the meaning of "risk pooling" as used in the second prong of the *Kentucky Association* test. (ECF No. 29 at 11-14.) The crux of Defendants' argument is that the term "risk pooling" has a narrow meaning specific to the insurance industry, and this is also its legal meaning as used in *Kentucky Association*. Defendants argue that "[r]isk pooling is the process of assuming a group of individuals who have a broad cross section of risks, in order to spread the risk among the individuals and predictably calculate costs and premiums." (ECF No. 29 at 11 (citations omitted).) The Court understands Defendants' argument to be, that because the moment Section 10-3-1116(3) operates comes *after* the pool of insureds has been established through risk classification, the statute cannot "substantially affect the risk pooling arrangement between the insurer and the insured." In other words, at the

moment Section 10-3-1116(3) matters, the risk pool is already established, so the statute cannot affect the risk pooling arrangement, and therefore, the second prong of the *Kentucky Association* test cannot be satisfied.

The Supreme Court, contrary to Defendants' argument, has held that to fall within the scope of the Savings Clause, a state law does not have to actually spread a policy holder's risk. *Kentucky Ass'n*, 538 U.S. at 339 n.3. The Supreme Court held that "our test only requires" "that the state law *substantially affect* the risk pooling arrangement between the insurer and insured. . . ." *Id*. (Emphasis added.) That is, the state law at issue must "alter the scope of permissible bargains between insurers and insureds." *Id*. at 338-39. The requirement that the Court engage in a *de novo* standard of review and the right to a jury trial dictates to the insurance company the conditions under which it must pay for the risk it has assumed. In *Rush Prudential*, the Supreme Court held that an independent review requirement affected the substantive terms of the insurance policy and thus, not simply the risk insured against. *Rush Prudential*, 536 U.S. at 373-75; *see Kidneigh*, 345 F.3d at 1186-87 (recognizing *Rush Prudential's* holding); *Am. Council of Life Insurers*, 558 F.3d at 606-07. Section 10-3-1116(3) *alters the scope of permissible bargains between insurers and insureds*. Section 10-3-1116(3) requires parties to include a specific provision in the contract related to judicial scrutiny of a claim denial. Section 10-3-1116(3) eliminates Defendants' option to minimize scrutiny of benefit denials, and eliminates Defendants' autonomy to guarantee terms congenial to its own interests. Colorado insureds may no longer agree to a discretionary clause in the absence of *de novo* judicial review and the right to a jury trial in exchange for a more affordable premium. By requiring *de novo* judicial review, and thereby removing the benefit of a deferential standard of review from insurers, such litigation may lead to a greater number of claims being paid, thus increasing the benefit of risk

pooling for consumers. *See Standard Ins.*, 584 F.3d at 845; *see also McClenahan v. Metro. Life Ins. Co.*, 621 F. Supp. 2d 1135, 1140-42 (D. Colo. 2009) (holding that ERISA does not expressly preempt Colo. Rev. Stat. § 10-3-1116(2) as enforcement of the statute would dictate to the insurance company the conditions under which it must pay for the risk that it has assumed) (citation omitted), *aff'd*, 416 F. App'x 693, 695-96 (10th Cir. Mar. 21, 2011) (unpublished).[3]

Thus, Section 10-3-1116(3) substantially affects risk pooling.

### 2. Conflict Preemption

Even if a state law regulates insurance such that it falls within the Savings Clause, it may nevertheless be preempted by ERISA's civil enforcement provisions. *See* 29 U.S.C. § 1132(a)(1)(B) ("Section 1132"). ERISA's civil enforcement provisions are the "sort of overpowering federal policy that overrides a statutory provision designed to save state law from being preempted." *Rush Prudential*, 536 U.S. at 375. "[E]ven a state law that can arguably be characterized as 'regulating insurance' will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 217-18 (2004). If a state law operates to frustrate ERISA's purpose, it will be preempted. *Boggs*, 520 U.S. at 841. "The question whether a certain state action is pre-empted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (alterations, internal quotations, and citations omitted). Because "Congress enacted ERISA to protect . . . the interests of participants in employee benefit plans and their beneficiaries," it set out "substantive regulatory requirements for employee benefit plans and [provided] for appropriate remedies,

---

[3] Section 10-3-1116(2) addresses insurance policies, contracts or plans which offer "health or disability benefits." Colo. Rev. Stat. § 10-3-1116(2). This matter involves life insurance benefits. (*See* ECF No. 26 at 1-2.) Accordingly, Plaintiff may not resort to Section 10-3-1116(2) as a basis for her argument in support of *de novo* review and the right to a jury trial.

sanctions, and ready access to the Federal Courts." *Aetna Health*, 542 U.S. at 208 (citation omitted).

In relevant part, ERISA allows a plan participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Under ERISA, an insured may seek an injunction or other appropriate *equitable relief* to enforce ERISA or the plan's provisions. *See* 29 U.S.C. § 1132(a)(3).

Defendants argue that application of Section 10-3-1116(3) conflicts with congressional objectives by taking away the option of deferential review and mandating a jury trial relating to ERISA benefits claims in Colorado, which would result in a patchwork of different plan interpretations that would vary court-by-court and state-by-state. (ECF No. 29 at 14-21.) The Supreme Court has held that "ERISA induces employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (internal quotation and citation omitted). The Supreme Court has stated that ERISA's remedial provisions

> set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Aetna Health*, 542 U.S. at 208-09 (internal quotation and citation omitted). Accordingly, "any state-law cause of action that duplicates, supplements, *or supplants* the ERISA civil enforcement

remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id*. at 209 (emphasis added and citations omitted).

For the following reasons, the Court holds that Section 10-3-1116(3) conflicts with ERISA's remedial scheme, in part, and thus, ERISA preempts Section 10-3-1116(3).

        a.    *Standard of Review*

It is worth noting that the *de novo* standard of review, is already the default standard in an ERISA case, so it is difficult to imagine how Section 10-3-1116(3) which requires that level of review would conflict with the ERISA. *See Firestone Tire & Rubber*, 489 U.S. at 115. Further, in *Rush Prudential*, the Supreme Court held that ERISA requires only that (1) the plan grant a "beneficiary some mechanism for internal review of a benefit denial"; (2) the plan "provide a right to a subsequent judicial forum for a claim to recover benefits"; and (3) that the standard of juridical review not conflict with anything in the text of ERISA, which the Supreme Court read to require "a uniform judicial regime of categories for relief and standard of primary conduct, not a uniformly lenient regime of reviewing benefit determinations." *Rush Prudential*, 536 U.S. at 385 (internal citations omitted). Thus, the Court concludes that a *de novo* standard of judicial review does not conflict with ERISA's remedial scheme.

        b.    *Right to a Jury Trial*

ERISA, by its express terms, does not prohibit a jury trial. The Tenth Circuit has previously held that the Seventh Amendment to the United States Constitution *does not guarantee* an ERISA claimant a right to a jury trial. *Bigley v. Ciber, Inc. Long Term Disability Coverage*, 570 F. App'x 756, 761 (10th Cir. 2014) (unpublished) (citation omitted); *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1356-57 (10th Cir. 2009) (citations omitted), *cert.*

*denied*, 560 U.S. 939 (2010); *Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156, 1161-62 (10th Cir. 1998) (citation omitted).

The Court does not find Tenth Circuit precedent holding that ERISA does not permit a jury trial based upon the Seventh Amendment controlling but it is persuasive for its logic. The Tenth Circuit has "decided that the proper common law analogue for a § 1132(a)(1)(B) claim for benefits is 'an action to enforce a trust' . . . which at common law was an equitable action. . . ." *Graham*, 589 F.3d at 1356-57 (internal citations omitted). Because an action under Section 1132(a) of ERISA is equitable rather than legal in nature, the right to a jury trial offends ERISA's remedial structure.

Section 10-3-1116(3) offends ERISA because, under Supreme Court precedent, the right to a jury trial "serve[s] as an alternate enforcement mechanism[] outside of ERISA's civil enforcement provisions." *See Am. Council of Life Ins.*, 558 F.3d at 607; *see also Aetna Health*, 542 U.S. at 217-18 (holding that "even a state law . . . regulating insurance will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme") (internal quotation marks omitted). The right to a jury trial is foreign to the ERISA statute. In this case, Section 10-3-1116(3) changes the ultimate decision-making entity— no longer is it the province of the federal court to determine whether a benefit denial conflicts with ERISA or the plan's provisions rather it is that of a jury. Congress did not foresee that a jury would be the ultimate decision-maker. Section 10-3-1116(3), by providing the right to a jury trial, interjects a procedure that undermines Section 1132(a) because it inhibits prompt adjudication by the judiciary. *See Rush Prudential*, 536 U.S. at 381 n.11 (noting that a "State might enact an independent review requirement with procedures so elaborate, and burdens so

onerous, that they might undermine § 1132(a)"). Section 10-3-1116(3) supplants the remedial structure of Section 1132(a). Thus, ERISA preempts Section 10-3-1116(3).

The Court does not find solace in the fact that under Rule 50(a)(1) of the Federal Rules of Civil Procedure, it might be claimed that the Court retains ultimate decision-making ability. *See* Fed. R. Civ. P. 50(a)(1). Under ERISA, generally, the Court addresses only the "administrative record" before it. *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1161 (10th Cir. 2010) (holding that a court is prohibited from "considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits" but that this "general restriction does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest") (citation omitted); *Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004) (citation omitted). Thus, to the extent that Section 10-3-1116(3) calls for a jury trial with evidence outside of the administrative record, the conflict with ERISA is evident given Tenth Circuit precedent. To the extent that Section 10-3-1116(3) provides for a jury trial limited to a review of the administrative record, the Court would have to address whether a reasonable jury has a legally sufficient evidentiary basis to find for a party in light of the administrative record. Thus, even this narrow right to a jury trial imposes a new procedural burden on the Court which Congress did not foresee when enacting ERISA's remedial scheme.

The Court does not find *Kohut v. Hartford Life & Acc. Ins. Co.*, 710 F. Supp. 2d 1139, 1147-49 (D. Colo. 2008), on point as in that case there was no discussion as to whether conflict preemption principles applied, specifically whether the right to a jury trial conflicts with ERISA's remedial structure. *Timm*, 259 P.3d at 527. Likewise, the Court does not find *McClenahan*, 621 F. Supp. 2d at 1139-42, on point as in that case the court concluded that

Section 10-3-1116(2) *does not change the way federal courts review benefits claims* under ERISA and does not conflict with ERISA's remedial scheme. *Timm*, 259 P.3d at 527. In contrast, here the Court may be required to review whether the jury had a legally sufficient basis for its determination.

      **C.**      **Severability of Colorado Revised Statute § 10-3-1116(3)**

"The severability of a statute is an issue of state law." *Panhandle E. Pipeline Co. v. State of Okla. ex rel. Comm'rs of Land Office*, 83 F.3d 1219, 1229 (10th Cir. 1996) (citation omitted). The statute at issue provides that

> if any provision of this section or its application to any person or circumstances is held illegal, invalid, or unenforceable, no other provisions or applications of this section shall be affected that can be given effect without the illegal, invalid, or unenforceable provision or application, and to this end the provisions of this section are severable.

Colo. Rev. Stat. 10-3-1116(6). The Court reads Section 10-3-1116(6) as permitting it to sever an entire subsection from the underlying statute. The Court does not read Section 10-3-1116(6) as permitting it to sever a portion of a subsection, in this case a portion of a sentence, from the underlying statute. Thus, the Court is unable to sever the right to a jury trial from the entirety of Section 10-3-1116(3). As such, ERISA preempts Section 10-3-1116(3) in its entirety.

**IV.     CONCLUSION**

Based on the foregoing, the Court:

(1)     DENIES Plaintiff's motion for partial summary judgment regarding the proper standard of review (ECF No. 26), to wit, the Court will engage in an "arbitrary and capricious" standard of review regarding Defendants' denying Plaintiff benefits under the 2012 Plan due to the presence of a discretionary clause.

DATED this 19th day of February, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge