**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 14–cv–00656–RM–KMT

MARILYN O. SHAFER,

      Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York Insurance Company, and
SCHLUMBERGER TECHNOLOGIES, INC., a Texas Corporation,

      Defendants.

---

**ORDER**

---

In this matter, Plaintiff Marilyn O. Shafer alleges[1] that (1) Defendant Metropolitan Life

Insurance Company ("MetLife") violated the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq*., by denying her claim for life insurance benefits under the

2012 MetLife Policy (ECF No. 1 ¶¶ 25-26); (2) Defendant MetLife violated ERISA by failing to

provide Plaintiff with a summary plan description ("SPD") for the 2012 MetLife Policy (ECF

No. 1 ¶¶ 27, 29)[2]; and (3) Defendant MetLife and Defendant Schlumberger Technology

---

[1] Plaintiff's Complaint asserts only two claims for relief.  (ECF No. 1 at 6-7.)  The Court, similar to Defendants, has construed Plaintiff's Complaint as asserting three claims.  (*See* ECF No. 1 ¶¶ 25-31.)
[2] Plaintiff raises for the first time in her opening brief on the merits (ECF No. 30), that Defendant Schlumberger Technology Corporation ("STC") violated ERISA, 29 U.S.C. § 1104(a)(1), by materially misrepresenting the status of her deceased husband's insurance coverage in breach of its fiduciary duties.  (*Compare* ECF No. 30 at 26-34 *with* ECF No. 1 and ECF No. 18.)

Corporation[3] ("STC") breached their contract by not paying the full amount of life insurance benefits due Plaintiff under the 2012 MetLife Policy (ECF No. 1 ¶¶ 30-31).

This matter is before the Court on "the merits for judicial review of an ERISA claim." (ECF Nos. 30; 33; 34; 35.)

For the reasons stated below, the Court finds (1) MetLife did not violate ERISA by denying Plaintiff's claim for benefits in excess of the amount of $873,000 plus interest; (2) Plaintiff did not allege a claim against STC for its alleged breach of its fiduciary duties under ERISA and therefore, this "claim" is subject to dismissal; (3) Plaintiff did not allege a claim against STC for its alleged failure to provide Plaintiff with a SPD and therefore, this "claim" is subject to dismissal; (4) MetLife did not violate ERISA by not providing Plaintiff with a SPD; and (5) ERISA preempts Plaintiff's breach of contract claim[4].

## I.      BACKGROUND

### A.      Relevant Factual Background

Effective January 1, 2012, STC changed its life insurance carrier and contracted with MetLife to provide group life insurance for its employees in 2012, *i.e.*, the "2012 MetLife Policy." (Admin. R. ("AR") 0001-0099, 0818-19.)

In 2011, Plaintiff's deceased husband, Michael Shafer ("Decedent"), was employed at Smith International, Inc. ("Smith"). (*See* AR 1047.) STC acquired Smith. (AR 1047.) As a prior Smith employee, STC offered Decedent employee benefits under the 2012 MetLife Policy. (*See*, *e.g.*, AR 1856.) The open enrollment period for employee benefits for the 2012 MetLife Policy was during the month of November 2011. (AR 1862.)

On November 15, 2011, Decedent went on short-term disability leave. (*See* AR 1106.)

---

[3] Schlumberger Technology Corporation ("STC") avers that Plaintiff erroneously identified it as "Schlumberger Technologies, Inc." (ECF No. 29 at 1.) Plaintiff does not contest STC's averment.
[4] No party, including Plaintiff, briefs this issue. The Court, *sua sponte*, reaches this result.

Also on November 15, 2011, Plaintiff called STC's benefits department regarding questions about life insurance. (AR 1921; ECF No. 30-1 at 20, Report Tr. of Shafer Rec 1921 at 9:8-10.) An STC representative, Tiffany Gauvin ("Gauvin"), informed Plaintiff that life insurance coverage was still in effect while an employee was on disability leave. (AR 1921; ECF No. 30-1 at 20, Report Tr. of Shafer Rec 1921 at 9:8-13.) Gauvin inquired as to whether Decedent would be "on disability at some point, soon." (AR 1921, ECF No. 30-1 at 20, Report Tr. of Shafer Rec 1921 at 9:16-17.) Plaintiff informed Gauvin that Decedent has "already applied for it this year. But he's probably going to be back to work before next year" and that "it's just short-term . . . disability" and "he'll probably be back to work before . . . the beginning of 2012." (AR 1921, ECF No. 30-1 at 20-21, Report Tr. of Shafer Rec 1921 at 9:20-25 and 10:3-6.)

On November 15, 2011, Decedent enrolled for life insurance benefits provided by the 2012 MetLife Policy using Schlumberger Automated Benefits Link ("SABL"). (ECF No. 30-2, Pl.'s 2012 Enrollment Summary[5]; AR 1885; AR 1920; ECF No. 30-1 at 4, Report Tr. of Shafer Rec 1920 at 3:13-23.) Decedent's enrollment form (ECF No. 30-2 at 5, Pl.'s 2012 Enrollment Summary), stated that "I am aware that the plan(s) I may choose have prescribed benefits, exclusions, and other limitations that apply to me. . . ." (*See* AR 0710, 0819, 0822.)

In 2011, Decedent's life insurance benefits were covered by a Group Variable Universal Life policy ("GVUL Policy") insured by MetLife. (AR 1055-1097, 1588, 1856.) The face value of the GVUL Policy was $873,000. (AR 1586-88.)

Decedent elected life insurance benefits under the 2012 MetLife Policy in excess of that provided under his GVUL Policy. (*Compare* AR 1587-88 *with* ECF No. 30-2 at 2, Pl.'s 2012

---

[5] Plaintiff provides a clear copy of AR 707-10 and AR 803-06 as Exhibit B (ECF No. 30-2) to her opening brief. STC relies on Exhibit B. (ECF No. 34 at 1 n.1.) The Court does so as well.

Enrollment Summary; AR 1737.)  Plaintiff contends that Decedent elected benefits in the amount of $1,010,000.00.  (ECF No. 35 ¶ 7.)  MetLife computed that under the GVUL, Decedent had the following life insurance coverage:

- Base coverage = 2 X $124,548 annual earnings = $249,098, rounded to $250,000.

- Supplemental coverage = 5 X $124,648 annual earnings = $622,740, rounded to $623,000.

- Total coverage = $250,000 base coverage + $623,000 supplemental coverage = $873,000.

(AR 0818-19.)

The week of November 28, 2011, STC sent all employees, including Decedent, a December 2011 "GetConnected" newsletter.  (AR 1697; 1853-60.)  The GetConnected newsletter stated "If you are not actively at work on January 1, 2012, any supplemental coverage you elected under the Schlumberger Life Insurance and Disability Plans during 2012 Annual Enrollment will not take effect until you have returned to work for one full day."  (AR 1856.)  The GetConnected newsletter stated that "[a]ll benefits are governed by the official plan documents that describe these benefit programs in greater detail."  (AR 1860.)

STC mailed Decedent a copy of the "2012 Enrollment Guide."  (AR 1861-88; ECF No. 34-1 at 3, Lisa Bartley ("Bartley") Decl. ¶ 5(a).)  The 2012 Enrollment Guide was "designed to make it easy to learn about . . . benefits" but stated that "[a]ll benefits are governed by the official plan documents that describe these benefit programs in greater detail."  (AR 1888.)  The 2012 Enrollment Guide directed employees to SABL which has several documents pertaining to employee benefits, including the 2012 Enrollment Guide and the 2011 SPD.  (*See* AR 1862-63.)  The 2012 Enrollment Guide indicated that individuals were eligible for the 2012 MetLife Policy if they were "a full-time or part-time employee."  (AR 1863.)

The 2012 MetLife Policy has an "actively-at-work" provision which requires an employee to be "Actively at Work" in order for the elected coverage to take effect.  (AR 0040-41, 0092.)  If an employee is "not Actively at Work on the date insurance would otherwise take effect, insurance will take effect when [the employee] resume[s] Active Work for at least one full scheduled day."  (AR 0040.)  Additionally, the employee "must also have been Actively at Work for at least 20 hours during the 7 calendar days preceding that date."  (AR 0040.)  The 2012 MetLife Policy defines Actively at Work as occurring where the employee is

> performing all of the usual and customary duties of [his] job on a Full-Time or Part-Time basis.  This must be done at:
> * the Policyholder's place of business;
> * an alternate place approved by the Policyholder; or
> * a place to which the Policyholder's business requires [the employee] to travel. [The employee] will be deemed to be Actively at Work during weekends or Policyholder approved vacations, holidays or business closures if [the employee was] Actively at Work on the last scheduled work day preceding such time off.

(AR 0036.)  The 2012 MetLife Policy lists the Plan Administrator as STC.  (AR 0082.)  The 2012 MetLife Policy provides that the "Plan Administrator" and "other Plan fiduciaries" have "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan."  (AR 0086.)

The 2011 SPD twice states that "[i]f [an employee is] not actively at work on the day [his] coverage (or increased coverage) is scheduled to begin, [his] coverage (or increased coverage will take effect when [the employee has] returned to [his] assigned schedule of hours for one day."  (AR 0363, 0367.)  The 2011 SPD provides information on the life insurance benefits available under the 2012 MetLife Policy.  (AR 0360-81.)  The 2011 SPD lists the Plan Administrator as the Administrative Committee of the Schlumberger Group Life, Accidental Death and Dismemberment, and Business Travel Accident Plan.  (AR 0376.)  The 2011 SPD lists Aetna Life Insurance Company as the insurer.  (AR 0369.)

On December 7, 2011, Plaintiff called STC to ask whether STC "ha[d] received [Decedent's] request for [Decedent's] new life insurance policy [*i.e.*, the 2012 MetLife Policy], before [Decedent] submit[s] this withdrawal form with [Decedent's] old MetLife claim [*i.e.*, the GVUL Policy]." (AR 1920; ECF No. 30-1 at 4, Report Tr. of Shafer Rec 1920 at 3:13-17.) The STC representative, Lateya Gunn ("Gunn"), responded that "[she] show[s] that [Decedent has] the basic life . . . [she] also show[s] supplemental for employee with five times the eligible compensation . . . So I do show . . . that you have enrolled." (AR 1920; ECF No. 30-1 at 5, Report Tr. of Shafer Rec 1920 at 4:9-18.) Gunn also referred Plaintiff to Lisa Bartley ("Bartley"), Benefits Manager at STC (AR 0719), regarding questions about reductions of benefits under the 2012 MetLife Policy if the GVUL Policy was not relinquished (AR 1920; ECF No. 30-1 at 5-7, Report Tr. of Shafer Rec 1920 at 4:22-7:10).

STC negotiated with MetLife that certain employees who were not "Actively at Work" would receive life insurance coverage but only for the same amount that those employees had in effect on December 31, 2011. (AR 0403, 0818, 1589-1692.) Decedent was one of those employees covered by this negotiation, otherwise referred to as those "grandfathered" at their former insurance levels. (AR 0403, 0813, 1099, 1589-1692.)

Beginning January 1, 2012, Decedent was charged premiums for the 2012 MetLife Policy. (AR 0814.) On June 15 and 29, 2012, STC refunded Decedent his premium contributions for the 2012 MetLife Policy. (AR 1700-03, 0814-15.) Bartley blamed the deductions on a "system error." (AR 0719.)

On May 15, 2012, Decedent transitioned to long-term disability leave from short-term disability leave. (AR 1106, 1699.) Decedent died on July 7, 2012. (AR 0406a.) Decedent never was "Actively at Work" as defined by the 2012 MetLife Policy. (*See* AR 0480-81, 0819.)

6

In a letter dated July 18, 2012, STC informed Plaintiff that the "actively at work" limitation is "the type of limitation referred to in Item 4 of the acknowledgments that are written at the end of [Decedent's] 2012" enrollment summary. (AR 0819.)

On August 23, 2012, Plaintiff made a claim seeking benefits under the 2012 MetLife Policy. (AR 0889-90.) On September 17, 2012, MetLife paid the undisputed amount due $873,000 plus interest, which equals $873,239.17. (AR 0823.) On September 21, 2012, Plaintiff's counsel sent a letter to MetLife stating that she should have received $1,314,701.60 plus interest. (AR 0420-21.) On October 17, 2012, MetLife responded to Plaintiff's counsel's letter by stating it had completed its liability by paying $873,000 plus interest. (AR 0442-43.) On February 11, 2013, MetLife denied Plaintiff's claim for any amount over $873,000. (AR 0480-81.) On June 6, 2013, Plaintiff appealed the denial of any amount over $873,000. (AR 0793-0800, 1002-11.) On July 29, 2013, MetLife upheld its denial of Plaintiff's claim for any amount over $873,000. (AR 1027-28.)

On April 16, 2013, STC sent Plaintiff's counsel a copy of the 2011 SPD. (AR 1560-82.) In this transmittal of the 2011 SPD, STC states that MetLife is the insurer of the life-insurance benefits. (AR 1560.)

**B.    Procedural Background**

On March 3, 2014, Plaintiff filed the Complaint at issue against Defendants. The Complaint pleads two claims for relief. (ECF No. 1 at 6-7.) In her first claim (ECF No. 1 ¶¶ 25-29), Plaintiff alleges that Metlife "[b]y denying [Plaintiff's] claim for benefits, and by related acts and omissions, [] has violated, and continues to violate, the terms of the [2012 Metlife] Policy" (ECF No. 1 ¶ 26). In her first claim (ECF No. 1 ¶¶ 25-29), Plaintiff also alleges that Defendant MetLife "has failed to provide [Plaintiff] with a Summary Plan Description" (ECF

No. 1 ¶ 27).  In her second claim (ECF No. 1 ¶¶ 30-31), Plaintiff alleges that "Defendants breached their contract effective February 11, 2013, wherein they refused to pay the full amount of insurance benefits to [] Plaintiff" (ECF No. 1 ¶ 31).  Plaintiff seeks, in relevant part, an order that (1) MetLife pay the "remaining benefits owed to [Plaintiff] under the [2012 MetLife] Policy, together with statutory interest"; (2) Defendants pay Plaintiff "the costs of the suit herein, and reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g)"; (3) STC pay Plaintiff "$100 per day for the failure to provide a [SPD], pursuant to 29 U.S.C. § 1132(c)(3)"; and (4) provides "such other and further relief as this Court deems just and proper."  (ECF No. 1 at 7.)

On June 5, 2014, Magistrate Judge Kathleen M. Tafoya entered a scheduling order in this matter.  (ECF No. 18.)  Plaintiff set forth that she "sued Defendants for their failure to honor the terms of the insurance policy issued to [Decedent].  Additionally, Plaintiff has sued Defendants for their failure to provide her with a 2012 [SPD]."  (ECF No. 18 at 2.)

On June 24, 2014, MetLife filed the administrative record.  (ECF No. 20.)  On July 29, 2014, STC moved to supplement the administrative record which Judge Tafoya subsequently granted following which STC filed the supplement to the administrative record.  (ECF Nos. 21; 24; 25.)

On August 1, 2014, Plaintiff filed a motion for partial summary judgment as to the proper standard of review in this matter.  (ECF No. 26.)  The Court denied Plaintiff's motion for partial summary judgment and stated that it will apply an "arbitrary and capricious" standard of review with respect to MetLife's denial of ERISA benefits in excess of $873,000 plus interest due to the presence of a discretionary clause in the 2012 MetLife Policy.  (ECF No. 37 at 18.)

On August 29, 2014, Plaintiff filed her opening brief in this matter.  (ECF No. 30.)  Plaintiff, in her brief, states that there are three issues presented for the Court's review:

8

(1)      Whether Defendants arbitrarily and capriciously based the [Decedent's] benefit on his base salary, rather than on his base salary plus bonuses, as required by the 2012 [MetLife] Policy, thus underpaying [] Plaintiff by $486,000;

(2)      Whether [STC's] material misrepresentations during the enrollment process breached its fiduciary duties to Plaintiff;

(3)      Whether [STC] is liable for ERISA's statutory penalty for its failure to provide a summary plan description for the 2012 [MetLife] Policy, as required by ERISA.

(ECF No. 30 at 1-2.)

MetLife disagrees with Plaintiff's characterization of the issue related to it.  (ECF No. 33 at 1.)  MetLife states that the issue before the Court is "whether MetLife reasonably determined that based on the Actively at Work Requirement of the 2012 [MetLife] Policy, the Decedent was not eligible for life insurance benefits elected under the 2012 [MetLife] Policy because of the Decedent never having been actively at work on or after January 1, 2012, the 2012 [MetLife] Policy's effective date."  (ECF No. 33 at 1-2.)

STC disagrees with Plaintiff's characterization of the issues.  (ECF No. 34 at 1-3.)  STC argues that the Court "should dismiss Plaintiff's newly added breach of fiduciary duty claim based on purported omissions."  (ECF No. 34 at 3.)  Further, STC argues that the Court "should dismiss Plaintiff's claim alleging failure to provide [2012 MetLife Policy] documents under 29 U.S.C. §§ 1024(b) and 1132(c)(1)(B) because, in addition to publishing the 2011 SPD on SABL, STC promptly provided the 2011 SPD two times in response to Plaintiff's requests."  (ECF No. 34 at 3.)

No party briefs the merits of Plaintiff's breach of contract claim (ECF No. 1 ¶¶ 30-31). (*See generally* ECF Nos. 30; 33; 34; 35.)

## II.     LEGAL STANDARDS

### A.     ERISA Benefits Determination

The Tenth Circuit Court of Appeals directs that an ERISA dispositive motion should be framed as either a motion for a bench trial on the papers or a motion for summary judgment. *See Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1307 n.1 (10th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008); *see also Sullivan v. Limited Brands, Inc. Long-Term Disability Program*, Case No. 06-CV-00918-MSK-MEH, 2008 WL 659641, at *1 n.2 (D. Colo. Mar. 5, 2008) (holding that "where the parties have not disputed the completeness of the [a]dministrative [r]ecord . . . [the Court] treats the case as presenting cross-appeals under Fed. R. App. P. 28.1, and finds that argument as to facts and law are sufficiently presented that the case can be resolved on the papers. . . .") (citation omitted)).   Further, the Tenth Circuit has held that "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006) (internal quotation marks omitted)). In an ERISA benefits determination case, a district court "acts as an appellate court and evaluates the reasonableness of a plan administrator's decision based on the evidence in the administrative record." *Hancock v. Metro. Life Ins. Co.*, Case No. 2:06-CV-00882 DAK, 2008 WL 2996723, at *4 n.2 (D. Utah Aug. 1, 2008), *aff'd*, 590 F.3d 1141 (10th Cir. 2009).

The Court previously held that it will apply an "arbitrary and capricious" standard of review in this matter due to the presence of a discretionary clause.  (ECF No. 37 at 18.)  Review under the arbitrary and capricious standard is limited to determining whether the administrator's interpretation of the plan was reasonable and made in good faith. *Weber v. GE Group Life*

*Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citation omitted); *see also Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan*, 11 F.3d 1567, 1569-70 (10th Cir. 1993) (holding that the Court looks to whether the decision is "lacking in substantial evidence or contrary to law") (citations omitted).  Under this standard, the administrator's decision may not be set aside if it is based on a "reasonable interpretation of the plan's terms and made in good faith."  Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary.  *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004) (citing *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380, 380 n.4 (10th Cir. 1992)). Review is limited to the administrative record and the facts before the administrator at the time of its decision.  *Sandoval*, 967 F.2d at 380 (citations omitted).

### B.      Summary Judgment on Plaintiff's Other Claims

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.  *See 1-800-Contacts,*

*Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id*. The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own

search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal

quotation and citation omitted).  The Court is "not obligated to comb the record in order to make

[Plaintiff's] arguments for [her]."  *See Mitchell v. City of Moore*, *Okla.*, 218 F.3d 1190, 1199

(10th Cir. 2000).  Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response

or reply shall include the specific page or statutory subsection to which reference is made."  D.C.

Colo. L. Civ. R. 7.1(e).

## III.   ANALYSIS

### A.    Plaintiff's ERISA Benefits Denial Claim

Courts review an ERISA benefits denial claim as "they would any other contract claim by

looking to the terms of the plan and other evidence of the parties' intent.  If plan documents are

reviewed and found not to be ambiguous, then they may be construed as a matter of law."

*Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1203 (10th Cir. 2013) (citations

omitted).  Summary documents provide communication with beneficiaries about the plan but

their statements do not themselves constitute the terms of the plan for purposes of ERISA section

502(a)(1)(B).  *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011).  Plan beneficiaries cannot

be bound to policy terms for which they receive no notice.  *See Members Servs. Life Ins. Co. v.*

*Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 956 (10th Cir. 1999) (citation omitted).

The heart of the parties' dispute with respect to Plaintiff's ERISA benefits denial claim

(ECF No. 1 ¶¶ 25-29) is whether Decedent had notice of the 2012 MetLife Policy's Actively at

Work requirement; and, if so, whether MetLife arbitrarily and capriciously denied Plaintiff's

claim for increased life insurance benefits under the 2012 MetLife Policy.  For the below stated

reasons, the Court finds that (1) Decedent had notice of the Actively at Work requirement and

(2) MetLife did not arbitrarily and capriciously deny Plaintiff's claim for benefits under the 2012

MetLife Policy in excess of $873,000 plus interest.

       1.     Whether Plaintiff Had Notice of the Actively at Work Requirement

     The 2012 MetLife Policy had an Actively at Work Requirement.  (AR 36, 40, 41.)

Specifically, the 2012 MetLife Policy stated that

> if [the employee is] not Actively at Work on the date insurance would otherwise
> take effect, insurance will take effect when [the employee] resume[s] Active
> Work for at least one full scheduled day.  For a Contributory Life Insurance
> benefit to take effect, in addition to having been Actively at Work on the date the
> insurance benefit is to take effect, [the employee] must also have been Actively at
> Work for at least 20 hours during the 7 calendar days preceding that date.

(AR 0041.)  The 2012 MetLife Policy's SPD, which became effective January 1, 2011, and

provided that "[i]f you are not actively at work on the day *coverage (or increased coverage) is*

*scheduled to begin, your coverage (or increased coverage) will take effect when you have*

*returned to your assigned schedule of hours for one day*."  (AR 0367 (emphasis added).)

Further, Decedent's 2012 MetLife Policy Enrollment Form contained the following

acknowledgment:  "I am aware that the plan(s) I may choose have prescribed benefits,

exclusions, and other limitations that apply to me. . . ."  (ECF No. 30-2 at 5, Pl.'s 2012

Enrollment Summary; *see* AR 0710, 0819, 0822.)

     Plaintiff's allegation that she and Decedent did not have sufficient notice of the Actively

at Work requirement (ECF No. 1 ¶ 17) is not substantiated by the administrative record.  (AR

0036, 0040-41, 0367.)  Plaintiff cannot avoid the Court's conclusion that Decedent had notice of

the Actively at Work requirement which is clearly identified in the 2012 MetLife Policy and

which Plaintiff acknowledged in his 2012 MetLife Policy Enrollment Form. (AR 0036, 0040-41;

ECF No. 30-2 at 5, Pl.'s 2012 Enrollment Summary; *see* AR 0710.)

The draft status of the 2012 MetLife Policy at the time Decedent enrolled in coverage (ECF No. 33 at 46) does not change the Court's analysis.  Specifically, the 2012 Enrollment Guide, provided before the 2012 MetLife Policy went into effect but after Decedent made his 2012 election, noted that "[a]ll benefits are governed by the official plan documents."  (AR 1888.)  Further, Decedent's 2012 MetLife Policy Enrollment form states that his elections were subject to "prescribed benefits, exclusions, and other limitations"; one of which STC determined the Actively at Work requirement is.  (AR 0819, 0822.)  The 2011 SPD which was applicable to the 2012 MetLife Policy had an actively at work requirement.  (AR 0367-68.)  The fact that the 2012 MetLife Policy became finalized subsequent to Plaintiff's election does not change the existence of the Actively at Work exclusion or limitation.  *See Jones v. Aetna Life Ins. Co.*, Case No. 01-2476, 2002 WL 1870469, at *5-7 (E.D. Pa. Aug. 14, 2002).  Plaintiff's reliance (ECF No. 35 at 64-65) on *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*, 38 F.3d 514 (10th Cir. 1994), is misplaced.  In *Bartlett*, the court's "holding [was] necessarily limited to *[those] unique* circumstances."  *Id*. at 518 (emphasis added).  Further, unlike in *Bartlett*, in this matter there was a summary plan description which contained an active at work provision available to Decedent at the time he was making his selection (although the Court acknowledges that other parts of the 2011 SPD were inaccurate).  (AR 0367-68.)

> 2. Whether MetLife Arbitrarily and Capriciously Denied Plaintiff's Claim for Increased Supplemental Benefits

The 2012 MetLife Policy had an Actively at Work Requirement.  (AR 0036, 0040-41.)  On November 15, 2011, Decedent enrolled in the 2012 MetLife Policy in an attempt to increase his life insurance benefits.  (AR 0803; ECF No. 30-2, Pl.'s 2012 Enrollment Summary.)  On November 15, 2011, Decedent went on disability.  (*See* AR 1106.)  Decedent never became Actively at Work during the term of the 2012 MetLife Policy.  (AR 0480-81, 0819.)  Substantial

evidence and a lack of evidence of bad faith (*see infra* Section III.A.2), supports the Court's conclusion that since Decedent did not become Actively at Work at any time after January 1, 2012, MetLife *did not* arbitrarily and capriciously deny Plaintiff's claim for increased supplemental life insurance benefits under the 2012 MetLife Policy.  *Weber*, 541 F.3d at 1010; *see also Rademacher*, 11 F.3d at 1569.  Rather, MetLife reasonably interpreted the 2012 MetLife Policy to exclude Decedent from coverage in excess of $873,000 plus interest.

Plaintiff fails to prove bad faith led to MetLife's decision.  Plaintiff argues that Defendants "began a hurried attempt to retroactively change the 2012 [MetLife] Policy and cover up their breach of fiduciary duties." (ECF No. 30 at 25.)  The Court does not find Defendants' actions to be an indicia of bad faith.  Specifically, STC refunded Decedent's life-insurance premium contributions prior to a claim being made.  (AR 406a, 1700-03, 0814-15.)  Further, even if STC refunded the premiums subsequent to Plaintiff's filing a claim, it would not be an indicia of bad faith; rather, it would be simply returning contributions to a level of insurance coverage for which Decedent never became eligible because he did not meet the Actively at Work requirement.  Had Decedent become Actively at Work, then those contributions would have been properly deducted.  It is not clear to the Court that Defendants had an obligation to provide any life-insurance coverage until Defendants entered into the "grandfather" agreement.  The fact that Defendants entered into an agreement to provide life-insurance coverage for employees otherwise excluded from the 2012 MetLife Policy is not an indicia of bad faith rather it demonstrates that Defendants desired to provide those "grandfathered" with some benefits.  (AR 403, 818, 1589-1692.)  Additionally, the fact that not all MetLife employees were aware of the "grandfather" agreement (ECF No. 30 at 26) does not

16

indicate bad faith; rather, at most, it indicates internal employees' failure to know all relevant information.

**B.      Plaintiff's Other "Claim(s)"**

Neither party briefs the appropriate standard of review with respect to Plaintiff's "other claims," *i.e.*, those that are not the review of an ERISA benefits denial.  Plaintiff's opening brief is titled "Opening Brief on the Merits for Judicial Review of an ERISA Claim."  (ECF No. 30 at 1.)  Plaintiff submitted her brief in conformity with the Court's Civil Practice Standards as they pertain to summary judgment motions.  (*Compare* ECF No. 30 *with* Court's Civil Practice Stds. IV.B.2. (eff. July 2014).)  Further, Plaintiff filed a motion for judgment in which she requested "that her Motion for Partial Summary Judgment [(ECF No. 26)] be determined before the Court decides *the merits of this case*."  (ECF No. 36 at 2 (emphasis added).)  Because Plaintiff requests a decision on the merits of this case, in its entirety, the Court proceeds to analyze whether summary judgment is appropriate in Plaintiff's favor on her other claims.

**1.      Plaintiff's "Claim" Against STC for Breach of Fiduciary Duties**

The Court cannot take on the responsibility of serving as a litigant's attorney in constructing arguments and searching the record.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).  "To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it; how the defendant's action harmed the plaintiff; and what specific legal right the plaintiff believes the defendant violated."  *Jacobs v. Ocwen Loan Servicing, LLC*, Case No. 13-CV-02518-RB-BNB, 2014 WL 3893047, at *3 (D. Colo. June 16, 2014) (citing *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)).  "[C]laims, issues, defenses, or theories of damages not included in the *pretrial* order are waived even if they appeared in the complaint

and, conversely, the inclusion of a claim in the *pretrial* order is deemed to amend any previous pleadings which did not include that claim." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (emphasis added).

As stated previously, Plaintiff's Complaint (ECF No. 1) does not allege a claim for relief against STC related to her now argued breach of fiduciary duties (ECF No. 30 at 2). Further, the scheduling order (ECF No. 18) does not contain an allegation that STC breached its fiduciary duties. No pretrial order has been entered in this matter. (*See generally* Dkt.) Therefore, Plaintiff has not stated a claim for relief against STC for breach of its fiduciary duties. *See Nasious*, 492 F.3d at 1163; *see also Garrett*, 425 F.3d at 840; *see also, e.g., Anweiler v. Am. Elec Power Serv. Corp.*, 3 F.3d 986, 992 (7th Cir. 1993) (holding that "[a]n action to recover from a breach of fiduciary duty [] is distinct from an action to recover plan benefits under section 1132(a)(1)(B) of [ERISA]") (citations omitted); *see also Allen v. Garden City Co-Op, Inc.*, 651 F. Supp. 2d 1249, 1265-66 (D. Kan. 2009).

Plaintiff argues that her Complaint alleges that "[t]he Shafers were not advised properly of any 'return to work' policy, nor of any impacts on their coverage. Schlumberger and Metropolitan had a duty to so notice and inform them." (ECF No. 1 ¶ 17.) This allegation, alone and in conjunction with the Complaint's other allegations, is insufficient to provide STC with proper notice of a claim against it for "breach of fiduciary duties." ERISA allows for an action to enforce and seek appropriate relief because of a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Plaintiff's Complaint makes no allegation with respect to this subsection of ERISA. (*See generally* ECF No. 1.)

Thus, the Court dismisses Plaintiff's "claim" against STC for alleged breach of its fiduciary duties.

2.      Plaintiff's "Claim" Against STC for Failing to Provide a Summary Plan
        Description

Similar to her "claim" against STC for its alleged breach of fiduciary duties, Plaintiff's

Complaint (ECF No. 1) does not allege a claim against STC related to her now argued failure to

provide a summary plan description for the 2012 MetLife Policy (ECF No. 30 at 2).   Rather,

Plaintiff's Complaint is directed toward MetLife's alleged failure with respect to not providing

Plaintiff with a summary plan description.[6]   (ECF No. 1 ¶¶ 27-29.)   ERISA requires that *the plan

administrator* furnish a SPD upon request.   29 U.S.C. §§ 1021(a), 1024(b).   MetLife is not the

Plan Administrator of the 2012 MetLife Policy; rather, STC[7] is the Plan Administrator[8].   (AR

0082.)

To state a claim against STC for its alleged failure to provide a summary plan

description, Plaintiff must identify the properly named defendant.   *See Nasious*, 492 F.3d at

1163.   The *scheduling order* does not alter the claims at issue in this matter.   *See Wilson*, 303

F.3d at 1215.   Because Plaintiff's Complaint fails to state a claim against STC for alleged failure

to provide a summary plan description, the Court dismisses Plaintiff's "claim" against STC in

this regard.

3.      Plaintiff's Claim Against MetLife for Failing to Provide a Summary
        Plan Description

As stated previously, Plaintiff's Complaint alleges that MetLife "failed to provide Mrs.

Shafer with a Summary Plan Description."   (ECF No. 1 ¶ 27.)   Plaintiff fails to identify any legal

---

[6] The Court recognizes that Plaintiff's prayer for relief includes a request that STC pay Plaintiff for the failure to provide a SPD.   (ECF No. 1 at 7.)   Further, the Scheduling Order (ECF No. 18) states that "Plaintiff has sued Defendants for their failure to provide her with a 2012 [SPD]."   (ECF No. 18 at 2.)   The Court finds this prayer for relief and statement in a scheduling order insufficient to allege a claim against STC for its failure to provide a SPD.
[7] The 2011 SPD names the Administrative Committee, Schlumberger Group Life, Accidental Death and Dismemberment, and Business Travel Accident Plan as the Plan Administrator.   (AR 0376.)   In case of a conflict between the summary plan description and the policy, the policy controls.   *See Amara*, 131 S. Ct. at 1878.
[8] In its response brief, STC states that it "reserves the right to challenge this mistaken assumption [that it is the Plan Administrator for the 2012 MetLife Policy] if necessary."   (ECF No. 34 at 39 n.10)   This reservation is not properly before the Court as it is conclusory and undeveloped.

basis that MetLife had an obligation to provide Plaintiff with a summary plan description.  (*See generally* ECF Nos. 1; 30.)  In her opening brief (ECF No. 30), Plaintiff does not argue that MetLife failed to provide the 2011 SPD for the 2012 MetLife Policy.

Based on the undisputed facts (AR 0082 (identifying that STC is the Plan Administrator for the 2012 MetLife Policy)), Plaintiff's claim against MetLife for failing to provide a summary plan description fails as a matter of law.  *See* 29 U.S.C. §§ 1021(a), 1022(a), 1024(b).  Therefore, MetLife is entitled to judgment with respect to Plaintiff's claim against it for its alleged failure to provide a summary plan description.

### 4.     Plaintiff's Breach of Contract Claim Against Defendants

"[A] court can grant summary judgment to a nonmoving party so long as the losing party had adequate opportunity to show whether there exists a genuine issue of fact or whether its opponent is entitled to judgment as a matter of law." *Sweger v. Texaco, Inc.*, 930 F.2d 35 n.2 (10th Cir. 1991) (unpublished) (citations omitted); *Prof'l Solutions Ins. Co. v. Mohrlang*, Case No. 07-CV-02481-PAB-KLM, 2009 WL 321706 at *13 (D. Colo. Feb. 10, 2009) (citations omitted).  In this matter, no party has moved for summary judgment with respect to Plaintiff's breach of contract claims against Defendants (ECF No. 1 ¶¶ 30-31).  There is no evidence of prejudice if the Court were to *sua sponte* address the breach of contract claim because Plaintiff had ample opportunity to address the issue of breach of contract in her brief (ECF No. 30) and requested a judgment on the merits of this case in its entirety (ECF No. 36 at 2).  There is no suggestion in the record or in the briefs that Plaintiff would respond differently to Defendants' affirmative defense that Plaintiff's breach of contract claim is preempted by ERISA (ECF No. 11 at 7; ECF No. 10 at 7).

The scope of ERISA preemption is very broad.  Under ERISA Section 514(a), 29 U.S.C. § 1144(a), ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."  As the 2012 MetLife Policy is indisputably an "employee benefit plan" as that term is used in Section 1144(a), *see* 29 U.S.C. § 1002(3), the only question is whether Plaintiff's state law breach of contract claim "relates to" that plan.  A law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Straub v. W. Union Tel. Co.*, 851 F.2d 1262, 1264 (10th Cir. 1988) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).  The Tenth Circuit has found that state common law breach of contract claims are preempted by ERISA.  *Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1025-26 (10th Cir. 2004) (citations omitted); *Straub*, 851 F.2d at 1264.  Plaintiff's claim is that Decedent "was covered under the 2012 [MetLife Policy] at the time of his death.  [Plaintiff], as his beneficiary, is entitled to a benefit equal to seven times the amount of [Decedent's] 2011 income, including all bonuses."  (ECF No. 1 ¶ 30.)  Further, Plaintiff alleges that "Defendants breached their contract . . . wherein they refused to pay the full amount of insurance benefits to the Plaintiff."  (ECF No. 1 ¶ 31.)  Clearly, Plaintiff's breach of contract claim (ECF No. 1 ¶¶ 30-31) relates to the 2012 MetLife Policy (AR 0001-99, 0803-06; ECF No. 30-2, Pl.'s 2012 Enrollment Summary).

Therefore, the Court holds that ERISA preempts Plaintiff's breach of contract claim.

## IV.   CONCLUSION

Based on the foregoing, including the lack of claims against STC for a breach of its fiduciary duties and failure to provide a summary plan description, the Court:

(1)    AFFIRMS MetLife's decision not to pay life-insurance benefits in excess of $873,000 plus interest under the 2012 MetLife Policy;

1:14-cv-00656-RM-KMT   Document 39   Filed 07/02/15   USDC Colorado   Page 22 of 22

(2)      GRANTS judgment in MetLife's favor and against Plaintiff with respect to

Plaintiff's ERISA benefits denial claim (ECF No. 1 ¶¶ 25-29);

(3)      GRANTS summary judgment in MetLife's favor and against Plaintiff with

respect to Plaintiff's claim that MetLife violated ERISA by not providing her with a summary

plan description (ECF No. 1 ¶¶ 27, 29);

(4)      GRANTS summary judgment in Defendants' favor and against Plaintiff with

respect to Plaintiff's breach of contract claim (ECF No. 1 ¶¶ 30-31); and

(5)      DIRECTS the Clerk of the Court to enter judgment in this matter consistent with

the Court's holdings.

DATED this 2nd day of July, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge